OWEN E. COONEY *v.* JOHN HAYES AND OTHERS.

*Deed. Real Property. Reservation. Lease. Landlord and Tenant.*

Reservation of the use and occupancy for a stated period in a deed by the grantor, will not be determined either in whole or in part, if the grantor leases a portion of that which he has reserved, if the reservation is not explicitly personal in its terms.

In construing reservations in deeds, the intent of the parties to be gathered from the nature of the subject matter, and the language used, must control.

The words, " the right to use and occupy," are equivalent to the right to the use and occupancy, and import a general right in the grantors to use and occupy, either by themselves or others, limited only by the implied legal duty to occupy in a prudent manner.

A tenant has a right to occupy by himself, his agent, or assignee, unless restrained by express stipulations in the lease. It is not necessary that the word " assigns" should be used to give this right.

The language in a deed, "Reserving to ourselves the right to use and occupy the said granted premises for five years, if we choose to do so for that length of time from the date of this deed; but if we leave the possession and occupancy of said premises before the expiration of said five years, then this reservation shall be at an end and determine, and the grantee, above named, shall have full possession thereof," is not a limitation personal in its nature, but general, and imports the right to occupy personally, or by tenants.

ACTION of ejectment. Plea, general issue. The case was tried by court, September Term, 1867, PIERPOINT, Ch. J., presiding, upon the following agreed facts :

Cooney *v.* Hayes et al.

" On the 9th January, 1866, the defendants, John Hayes and Mary Hayes, (wife of said John,) conveyed to the plaintiff by dee d, (which contained a reservation clause which is set forth in the opinion of the court,) the premises in question, together with the homestead hereinafter described, which previously thereto belonged to said John, and were a part of certain land occupied by him, and on the opposite end of which land to the premises in question, were the dwelling house and certain land appurtenant, then and ever since occupied by said John Hayes as a homestead. Said dwelling house and land appurtenant, exclusive of any portion of the premises in question, were, at the time of said conveyance, and ever since have been, worth more than five hundred dollars.

" After said conveyance, said John remained in possession and occupancy of the premises in question, until shortly previous to October 19th, 1866, on which day he executed and delivered to the defendant, Catlin, a lease of them, a copy of which is hereto appended marked " B." Said Catlin, having been in possession and occupancy of the premises for a few days previous under a verbal agreement similar to said lease, on the 19th day of October, 1866, entered into full possession and occupancy of said premises by virtue of said lease, and he, and the defendant, Gordon, have ever since been in the sole possession and occupancy of the same, holding and claiming them under, and by virtue of said lease, to which possession, occupancy and claim, the said John and Mary Hayes have fully assented, and to the former of whom they, the said Catlin and Gordon, have paid rent in accordance with said lease to the 19th of January, 1867. In the event of judgment for the plaintiff, the rent specified in said lease shall be the measure of damages, which damages are not to be estimated prior to October 19th, 1866."

### PAPER MARKED " B," REFERRED TO.

" This indenture, made this 19th October, 1866, by and between John Hayes, of Burlington, and H. G. Catlin, of Burlington

" Witnesseth : That the said Hayes agrees to lease to said Catlin the lot of land which he now occupies," (being a part of that reserved by said Hayes in his deed to said Cooney,) " covenanting with said

Catlin, that he shall wholly and peaceably enjoy the possession of said land for the term of four years, at the annual rent of one hundred and fifty dollars per year. It is also agreed, that in case the owner of said land shall build on the east corner thereof, the said Catlin is to have a proportional allowance in the rear of the land on the west end or otherwise."

The court rendered judgment, *pro forma*, for the seizin and possession of the premises described in the declaration, and for one hundred and forty-two dollars and ninety-one cents damages,—to which the defendant excepted.

*Henry Ballard*, for the defendants.

I. The reservation in the deed, (though in terms a reservation,) should be construed so as to give it the effect of an exception; as it is properly an exception of an estate for years out of the estate in fee, which is conveyed by the deed. The distinction between a reservation and an exception is so extremely vague and obscure in many cases, that the rule of law is, that a reservation will always be construed as an exception, if it be necessary to effect the intention of the parties. *Winthrop* v. *Fairbanks*, 41 Me. 307; *Smith* v. *Todd*, 41 Me. 314; *Bowen* v. *Conner*, 6 Cush. 132; *Marshall* v. *Roberts*, 28 Conn. 183; Coke upon Littleton, 143; *State* v. *Wilson*, 42 Me. 9.

Construed as an exception, the power of the grantors over the estate reserved, is unlimited during its continuance. 4 Kent, 568, 569. And they could only divest themselves of the estate reserved or excepted by a conveyance in writing, signed and sealed by them. Gen. Stat., p. 448, § 4; *Colby* v. *Colby*, 28 Vt. 10

The reservation should then be construed as if it read as follows: " reserving to ourselves," our heirs, executors, administrators and assigns, " the right to use," &c., " but if we," our heirs, executors, administrators and assigns, " leave the possession," &c.

If the grantors have the right of assigning their interest in the estate reserved without a forfeiture of it, they clearly have the power of leasing it during the continuance of their term. *Jackson, ex-dem.*; *Stevens* v. *Silvernail*, 15 John. 279.

II. The language of the reservation should not be construed

against the grantors, for the rule is well settled, that a grantee in a deed, by its acceptance, is bound by all its restrictions, limitations and exceptions, and so far as the mere question of construction is concerned, the language is considered as much the language of one party as the other. *Newell* v. *Hill,* 2 Met. 180 ; *Winthrop* v. *Fair-banks,* 41 Me. 313 ; *Bowen* v. *Conner,* 6 Cush. 136 ; Chitty on Contracts, p. 14, note.

*Hard & Shaw,* for the plaintiff.

The reservation in the deed from Hayes and wife to the plaintiff, is entirely personal, and gave no right in the premises in question to the grantors after the lease to Catlin, and the commencement of the latter's possession under such lease. The language used in the reservation excludes any idea that the right reserved is other than a mere personal one. " *Reserving to ourselves,*" not, " to ourselves, our heirs or assigns," nor, " to ourselves or our assigns." Reserving, " not the premises," but the right to use and occupy the said granted premises for five years, if we choose to do so for that length of time. The most that can be claimed for the defendants is, that on the face of the deed the proper construction of the reservation is doubtful. In such cases the rule is to construe the instrument against the party making it. 2 Wash. on R. P., p. 669, § 36 ; *Keeler* v. *Wood,* 30 Vt. 242 ; *Carpenter* v. *Millard,* 38 Vt. 18.

The opinion of the court was delivered by

Peck, J. The right of the plaintiff to maintain this action of ejectment depends upon the rights of the parties under the deed executed by the defendants John Hayes and his wife Mary Hayes, to the plaintiff, January 9, 1866. The action is to recover that portion of the premises conveyed by that deed, of which the defendants, Catlin and Gordon are, and since October 19th, 1866, have been, in the exclusive possession under a lease from the said John Hayes for the term of four years from October 19, 1866, the date of the lease ; Hayes and his wife, the grantors in the deed to the plaintiff, having from the date of that deed continued to reside, and still residing upon, and personally occupying, the other portion of the granted premises,

including the dwelling-house, called in the case, their homestead. The right of the plaintiff to recover must be determined by the construction of the reservation in the deed. The reservation is this: " Reserving to ourselves the right to use and occupy the said granted premises for five years if we choose to do so for that length of time, from the date of this deed; but if we leave the possession and occupancy of said premises before the expiration of said five years, then this reservation shall be at an end and determine, and the grantee above named shall have full possession thereof."

Incidentally in the course of the argument there has been some discussion of the question whether this is to be regarded as a reservation or an exception. No time need be spent in tracing the line of distinction between a reservation and an exception, merely for the purpose of giving this provision in the deed a name; because whatever it may be called, it is a provision intended to secure a right in the grantors that otherwise would pass to the grantee by the deed, and we are not aware of any rule of law to prevent giving effect to it according to the intent of the parties, to be gathered from the nature of the subject matter and the language used.

It is insisted on the part of the plaintiff that the reserved right to use and occupy the premises is only a personal right, and that whenever, and so far as the grantors cease to occupy the premises *personally*, the reservation is to that extent at an end, and the plaintiff has a right to enter. There is nothing in the relation of the parties to each other, nor in their relation to the property, nor in the nature and character of the right reserved, that shows it to be a mere personal right. It is true the owner of the reversion in real estate, and a landlord in leasing such property, may have a choice in tenants. Some he may prefer an account of their habits of caution and prudence, in view of the manner in which they would be likely to use and occupy the premises. But considerations of this character are not deemed in law sufficient to limit the tenant to a right of personal occupancy. A tenant has a right to occupy by himself, his agent or assignee, unless restrained by express stipulation in the lease. The word *assigns* is not necessary to give this right. So far as the nature of the right, and the relation of the parties to the prop-

erty bears upon the question in this case, no reason is perceived why the same principle should not apply as in case of landlord and tenant under a lease ; the same as if this deed had been absolute without any reservation, with a separate lease to the grantors in the deed, in the terms of this reservation. Where neither the right nor duty is in its nature of a personal character, they may generally be made so by stipulation, but in such case the language ought to be reasonably clear and explicit to that effect, otherwise no such limitation should attach. The question therefore is whether the language in this case imports a right to the use and occupancy personal only to the grantors, or a general right with its ordinary legal incidents. The words, " *the right to use and occupy,*" are equivalent to the right to *the use and occupancy,* and import a general right in the grantors to use and occupy either by themselves or others ; limited only by the implied legal duty to occupy in a prudent manner. But the whole language must be taken together in order to see whether the import of the words referred to, is restrained by other words in the instrument. The words, " if we choose to do so that length of time," &c., have some tendency in favor of the construction contended for by the plaintiff, as they might be more likely to be inserted if only a right of personal occupancy was intended, than if a general right was designed to be reserved ; but this is by no means decisive of the construction. It is urged by the plaintiff's counsel that the word *possession* is of itself of a personal character, as possession by a tenant is not such a possession by the landlord as will enable him to maintain trespass against a stranger. But for some purposes the possession of a tenant is the possession of the landlord. It is so for the purpose of acquiring title by adverse possession. But neither of these technical considerations have much bearing on this question of construction. Upon the whole language of the reservation, we think the right to the use and occupancy of the premises is not merely personal, but general, with the common legal incidents of such a right, one of which is the right to occupy personally or by a tenant.

But even if the right is only a right of personal occupancy, the contingency has not happened upon which it was to terminate so as to give the plaintiff a right of entry, even as to the portion of the

premises leased to Catlin. It is not every breach of covenant or of duty by a tenant in possession, that will give the reversioner a right to re-enter, unless the right of entry is secured by a stipulation to that effect. The provision as to the right of entry by the plaintiff, is, that " if we leave the possession and occupancy of said premises* before the expiration of five years, then this reservation shall be at an end and determine, and the said grantee above named shall have full possession thereof." The grantors have not left the possession and occupancy of the premises, but still reside there occupying the dwelling-house and all that portion of the premises not leased to Catlin. It is not claimed by the plaintiff's counsel that the reservation has come to an end or determined, except as to the portion of the premises leased to Catlin. It is only in the event that the reservation shall come to an end and determine, that the plaintiff is by the terms of the reservation to have the right to enter ; and then he is to " have full possession " of the premises, which means the entire premises. No provision is made for a termination of the reservation in parcels by territorial limits, and none can be implied. It is wholly at an end or wholly in force as to the whole premises ; and whenever the plaintiff's right of entry accrues, it entitles him to possession of the entire premises. No right of entry has yet accrued.

It could hardly be claimed that if one only of the grantors had ceased to occupy the premises, it would terminate the reservation and give a right of entry, and we think leasing a portion of the premises, for a portion of the five years, can have no such effect. What the result would be if the right of occupancy were merely personal, and substantially the whole premises were thus leased, the part reserved trifling, and the transaction calculated to evade the provision, in reference to the termination of this reservation, we are not called on to decide.

Upon both these grounds the judgment is reversed and judgment for defendants.