**UNITED STATES of America,
Petitioner-Plaintiff,**

v.

**EIGHT TRACTS OF LAND IN the TOWN OF BROOKHAVEN, COUNTY OF SUFFOLK, STATE OF NEW YORK, and Nancy T. Ljungqvist et al., Defendants.**

**No. 66–C–932.**

United States District Court
E. D. New York.
June 27, 1967.

------

Joseph P. Hoey, U. S. Atty. for Eastern District of New York, for petitioner-plaintiff; Peter H. Ruvolo, Asst. U. S. Atty., of counsel.

Sage, Gray, Todd & Sims, New York City, for defendants Nancy T. Ljungqvist and Edward Ljungqvist.

Stanley Gray Horan, New York City, for defendants Barbara T. Horan and Frederick G. Horan.

Martin B. Ashare, Patchogue, N. Y., for defendant Town of Brookhaven.

BARTELS, District Judge.

This is an action for the condemnation of eight tracts of land in the Town of Brookhaven, Suffolk County, State of New York, instituted by the United States of America pursuant to authority granted by the Fire Island National Seashore Act (16 U.S.C.A. § 459e, 78 Stat. 928) (Act) and other pertinent acts of Congress.[1] The proceeding was commenced on September 30, 1966 by the filing of the Government's complaint and Declaration of Taking, wherein the Government acquired an estate in fee simple to the eight tracts of land for the establishment and preservation of the Fire Island National Seashore. On the same date an order was entered granting the Government the right to immediate possession and confirming the vesting of title to the property as of that date. The defendant-owners, the Ljungqvists and the Horans, served their answers raising questions as to the date of the taking and as to the nature of the estate they were permitted to retain under the provisions of the Act. While the Town of Brookhaven was served as a party to the condemnation proceeding, it has neither appeared nor filed an answer to the complaint.

Both the Government and the defendants have addressed motions to the pleadings, the Government moving pursuant to Rule 12(f), Fed.Rules Civ.Proc., 28 U.S.C.A., to strike the answers of the defendants on the ground that they do not present proper defenses or objections under Rule 71A, Fed.Rules Civ. Proc., 28 U.S.C.A., and the defendants moving pursuant to Rules 13, 15 and 71A, Fed.Rules Civ.Proc., 28 U.S.C.A., for leave to file and serve amended answers to the complaint including a cross-claim against the Town of Brookhaven, leave to file the cross-claim being opposed by an affidavit of the Town's attorney.

---

1. Acts of Congress approved August 1, 1888 (25 Stat. 357), as amended (40 U.S.C.A. § 257); the Act of Feb. 26, 1931 (46 Stat. 1421, 40 U.S.C.A. § 258a); and acts supplementary thereto and amendatory thereof; and the Act of June 28, 1965 (79 Stat. 174).

*Government's Motion*

The issue upon this application is whether the defendant-owners have a right to insert in their answers objections to the Government's taking of the tracts, on the ground that they are retaining in a portion of the property taken only "a right of use and occupancy for twenty-five years" rather than "an estate for twenty-five years", pursuant to an election granted to them under the Act. Rule 71A specifically provides that a defendant who has any objection or defense to the taking of his property may identify the property in which he claims to have an interest, state the nature and extent thereof, and also all his objections and defenses to the taking of the property. "No other pleading or motion asserting any additional defense or objection shall be allowed."

Defendants claim that the statute under which Congress authorizes the Secretary of the Interior to exercise the right of condemnation for the purpose of establishing and preserving the Fire Island National Seashore, grants the owners three alternatives of election, one of which is an election "that the owner or owners shall retain an estate for twenty-five years. The price in this case shall likewise be diminished by the value of the estate retained." (Act, § 2.) The defendants exercised the right to retain such an estate in the parcels condemned. The complaint, however, asserts that the property is taken subject "as to two acres in Tract No. 3811 to a twenty-five year right of use and occupancy" to be retained by Nancy Ljungqvist and Barbara Horan. In the Declaration of Taking, the Government expressly declares, among other things, that the estate taken for public use is the fee simple title to Tract 3811 "subject further as to Tract 3811 to the reservation of a twenty-five year estate on approximately two acres, as more

particularly described in Exhibit 'F'." But this exhibit, after identifying and describing Tract No. 3811, states that the condemnation of that parcel is subject "* * * to the retention by Nancy Ljungqvist and Barbara Horan of a right of use and occupancy for residential purposes for a period of twenty-five years. * * * *" and further adds "Together with an easement of ingress and egress to the foregoing property." The language of Exhibit "F" reflects that of Section 4 of the Act rather than that of Section 2 under which the election was made. The defendants specifically challenge in their answers the right of the Government to condemn property within the eight mile "park" area without permitting them the right to retain an estate for years with certain rights thereunto appertaining rather than just a right of use and occupancy.

A certain amount of confusion has thus arisen by the use by the Government in both the complaint and the Declaration of Taking of the phrase "use and occupancy" rather than the phrase "an estate for twenty-five years". Under certain circumstances there may be no difference between these two phrases, depending upon the intent of the parties.[2] But the defendants should not be required to delve into the niceties of any distinction that may exist between the use of these two phrases when the use of only one phrase is mandated. Here we have an Act to interpret where under one section the phrase "an estate for twenty-five years" is used and under another section the phrase "use and occupancy" is employed. Section 4 of the Act, which apparently refers to the taking of land in an area of Fire Island outside the area containing Tract 3811, specifically provides in those cases that the owners may reserve for themselves "a right of use and occupancy of the improved property for noncommercial residential purposes

---

2. See, In Re Holzwasser's Will, Surr.Ct. 1941, 177 Misc. 868, 32 N.Y.S.2d 25; Wilford v. Dickey, 1962, 196 Pa.Super. 468, 175 A.2d 98; Word v. Kuykendall, Tex.Civ.App.1922, 246 S.W. 757; Cooney v. Hayes, 1868, 40 Vt. 478, 94 Am.Dec. 425; Miller v. City of New York, 1964, 15 N.Y.2d 34, 255 N.Y.S.2d 78, 203 N.E. 2d 478. See also, Jarman on Wills, 1910, 6 Ed., p. 1298, and cases cited therein.

for a term that is not more than twenty-five years". Under this section the Secretary is given the additional power to terminate this use and occupancy upon his determination that the same "is not consistent with an applicable zoning ordinance approved by the Secretary * *." No such condition is contained in Section 2(e) of the Act under which defendants' parcels were condemned and under which they were granted an election to retain an estate for twenty-five years. Thus there is a difference between the use of the two phrases in the context of the Act. In this case it appears that the Secretary was operating under Section 4 of the Act when he should have been acting under Section 2 of the Act. Supporting this conclusion is the statement in the complaint and the Declaration of Taking that the retained estate is to be used for residential purposes.

 Congress has a right in its authorizing statutes to impose on the authority to condemn such conditions as it may deem advisable and when it does so, these conditions must be observed. United States v. Meyer, 7 Cir.1940, 113 F.2d 387, cert. denied, 311 U.S. 706, 61 S.Ct. 174, 85 L.Ed. 459; United States v. Southerly Portion of Bodie Island, N.C., E.D.N.C.1953, 114 F.Supp. 427; United States v. 37.6 Acres of Land, etc., D.Conn. 1954, 126 F.Supp. 789. Accordingly, the defendants have a right in their answers to challenge the Secretary's authority to condemn the eight tracts of land upon the condition that they retain only the right of use and occupancy as set forth in the complaint and Declaration.

 The remaining objections,[3] however, raised in defendants' answers are not in the same category. They rest upon allegations that the estate which the defendants will retain does not include certain easements over other adjoining property condemned or to be condemned

by the Government and in particular, it does not include an easement over an existing road known as Quanch Road, or any substitute that may be hereafter constructed therefor. This easement defendants claim is necessary in order that they might have vehicular ingress and egress to and from their parcels. The theory of these objections is that the estate retained must be retained within the same framework or context of the original parcel and therefore must include the same easements and rights theretofore appertaining to the original parcels. There is nothing in the Act justifying such construction, nor is there anything in the Act requiring the Secretary to grant owners of condemned property upon Fire Island who elect to retain a twenty-five year estate, easements or rights over other adjoining parcels condemned or to be condemned. The failure to grant such rights appertaining to the twenty-five year estate will naturally reduce the value of the retained estate and proportionately increase the amount of compensation payable for the remaining portion of the condemned tract. As observed earlier, the Secretary in reserving to the defendants a twenty-five year estate also granted to them an easement of ingress and egress to and from the property. This was sufficient to make the reservation of the twenty-five year estate effective and meaningful. Indeed, any specification of routes or rights over areas of the National Seashore attached to twenty-five year estates reserved in the condemnation proceedings, would be inconsistent with the development of the area as foreseen by Congress.[4]

### Defendants' Motion

The defendants move pursuant to Rules 13(g), 15 and 71A, Fed.Rules Civ.Proc., 28 U.S.C.A., for permission to file a cross-claim against Brookhaven. This

---

3. The other objections included in the answers have been settled between the parties.

4. Senate Report No. 1300, dated August 4, 1964, U.S.Code Cong. and Adm.News

1964, p. 3710, indicates that all vehicular roads in the "park" area may be closed and that motor traffic should be prohibited from entering the park area, the area in which the defendants' property is located.

raises a question whether such a cross-claim is a permissible pleading in a condemnation action and if so, whether the Court should grant these defendants leave to amend for the purpose of including such a cross-claim.

The cross-claim is predicated upon a breach of an agreement between Brookhaven and the defendants to construct a highway upon an easement granted by the defendants bisecting five of the condemned tracts other than Tract 3811. The eight tracts of land involved herein are located within Brookhaven and the Government joined Brookhaven as a co-defendant only to determine and extinguish any claims for taxes, assessments or otherwise which the Town might have against the property. Taking advantage of this joinder, the defendants seek to file their cross-claim for damages.

It appears that in 1893 there was recorded in the official records of Brookhaven a record and survey of a town highway known as Inlet Bog Path. Whether or not the highway was ever constructed is unclear, but the Commissioners of Highway of Brookhaven apparently did mark and lay out such a highway. However, the original landmarks, courses and distances established in 1893 were either lost or obscured by the passage of time. The defendants desiring to resurrect such highway, entered into an agreement on December 8, 1959 with the Town of Brookhaven for the construction, maintenance and policing of a public town highway on an easement to be granted by them to Brookhaven, which highway would be known as Inlet Bog Path. According to Brookhaven's opposing affidavit the so-called highway, if constructed, would only be a boardwalk pursuant to Section 171 of the Highway Law of the State of New York, McKinney's Consol.Laws, c. 25.

The defendants fulfilled their part of the agreement by granting an easement to Brookhaven for the construction of the highway bisecting certain condemned tracts. On the other hand, the Town completely failed to fulfill its obligations and according to the defendants its ac-

tion in refusing to construct this new highway was motivated by bad faith. The crux of the cross-complaint as related to the subject-matter of this action is the allegation that the property to be condemned would be worth more than its present value had the highway been constructed, and consequently they wish to recover from Brookhaven the difference between the value of these tracts with a bisecting highway and the value of the property without such a highway.

United States v. 76.15 Acres of Land, N.D.Calif.1952, 103 F.Supp. 478, holds that such a cross-claim cannot be countenanced in a condemnation proceeding under Rule 71A because it sounds "in contract and is in personam, whereas the condemnation proceeding is an action in rem * * *." Later cases, however, in thoroughly discussing the application of Rule 71A and the applicability of cross-claims under Rule 13, disagree with this holding upon the ground that the purpose of Rule 13 was to prevent circuity of actions and multiplicity of suits and that no judicial rubric has been found to bridge the gap between Rule 13 and Rule 71A. "Empirical judgment inclines us away from letting Rule 13 become operative in these proceedings, but we refrain from invading the rule-maker's province or from fashioning policy." United States v. Merchants Matrix Cut Syndicate, 7 Cir. 1955, 219 F.2d 90, 96, cert. denied, 349 U.S. 945, 75 S.Ct. 873, 99 L.Ed. 1271, Moore, Federal Practice, Vol. 7, ¶ 71A.20 [3], pp. 2765–2766.

■■ Upon the issues of defendants' right to file a cross-claim, strict construction compels the Court to follow the last mentioned authorities admitting the applicability of Rule 13(g). Since this application has been made after the expiration of the twenty-day period, the defendants must nevertheless obtain the Court's permission under Rule 15(a). While amendments are as a general rule, freely granted as justice may require, they should be denied when their allowance prevents an equitable determination of the main suit and confuses the real issues involved. For this reason the de-

fendants' motion to file their cross-claim will be denied.

In reaching this determination the Court was influenced by two considerations. First, while it concluded that Rule 13(g) was applicable to *in personam* claims, it still had grave doubt as to whether the rule is applicable to an *in personam* claim whose relationship to the "property that is the subject matter" of the suit is so remote and tenuous as the defendants' cross-claim here. The breach of contract claim against Brookhaven is related to the property only in the sense that in determining the plaintiff's amount of recovery, the value of the condemned property as it now is will be compared to the value of said property upon the hypothesis that a highway had been constructed bisecting said property. This requires imagination and speculation. In other words, the relation of the claim to the property is highly technical in that the property will be referred to only as a measuring rod or yardstick to determine the amount of damages, if any, recoverable against Brookhaven. Such determination will not affect the value or the extent of the property condemned one way or the other and in no way affects the amount payable by the Government to the defendants or subjects the Government to any other claims either by the defendants or Brookhaven.[5]

The second consideration is a practical one. The independent nature of this cross-claim is such that an amendment would unnecessarily prolong the trial with issues which could be more properly determined in a separate action without interference with the condemnation proceedings. To complicate the proceedings further is the additional fact that the issues are to be tried before a jury, which could easily be misled and confused by connecting the condemnation value of the land taken with the amount of damages recoverable against Brookhaven. "Since condemnation juries are impaneled only for deciding compensation they commence deliberations in a positive award-ing-state-of-mind. An especially delicate equilibrium, acutely sensitive to factors influencing the quantum of award, is present throughout such trials. Perhaps we are underscoring the obvious, but it is our opinion that the jurors critical and difficult function, here, should not be further complicated by blurred and insufficient instructions or by improper arguments. * * *" United States v. Merchants Matrix Cut Syndicate, supra, 219 F.2d p. 98.

A proper evaluation of the competing interests necessitates a denial of the defendants' motion. This is an order.

---

5. Brookhaven has made no claim for compensation of any easement.